# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

### BEAUMONT DIVISION

| | | |
|---|---|---|
| JAMES WOODROW | § | |
| | § | |
| V. | § | NO. 1:05-CV-39 |
| | § | |
| INLAND PAPERBOARD & | § | |
| PACKAGING, INC. | § | |

## MEMORANDUM OPINION RE PLAINTIFF'S MOTION TO REMAND

Plaintiff requests the court to remand this action to the Texas state court from which it was removed.  By separate order, the court denied plaintiff's motion.  This opinion states the court's reasons for that ruling.

## I.  MAGISTRATE JUDGE AUTHORITY TO DETERMINE MOTION

This action is assigned for *trial* to Hon. Thad Heartfield, United States district judge.  It is referred to the undersigned United States magistrate judge for *pretrial management* pursuant to Referral Order of May 31, 2005.[1]  Therefore, a threshold

---

[1]      Title 28, United States Code, Section 636(b)(1)(A) and E.D. Tex. R. app. B (Rule 1(D)(1)) authorizes referral of pretrial case management to United States magistrate judges. Generally, such references contemplate that magistrate judges shall rule on all pretrial matters that Congress authorizes magistrate judges to hear and determine. Magistrate judges consider all other pretrial motions, conduct hearings when necessary, and submit written reports containing proposed findings of fact, conclusions of law, and recommendations for disposition.

question is whether plaintiff's motion to remand is one that a magistrate judge may hear and determine irrespective of the parties' consent.

Courts differ on whether motions to remand actions to state court are within a magistrate judge's dispositive authority. Compare Vaquillas Ranch Co. v. Texaco Exploration & Production, Inc., 844 F. Supp. 1156 (S.D. Tex., 1994), and City of Jackson v. Lakeland Lounge, 147 F.R.D. 122 (S.D. Miss. 1993) (both holding that motions to remand are not dispositive and, consequently, may be referred to a United States magistrate judge for determination), with First Union Mortgage Corp. v. Smith, 229 F.3d 992, 996 (10th Cir., 2000), and In re U.S. Healthcare, 159 F.3d 142 (3d Cir. 1998) (both holding that inasmuch as remand orders banish litigants from federal court, they are equivalent to final decisions or dispositive actions that must ultimately be performed by a district judge).

In absence of a definitive circuit rule, the undersigned submits a report with a recommendation when an action should be remanded. See Bristol-Myers Squibb Co. v. Safety Nat. Cas. Corp., 43 F. Supp.2d 734 (E.D. Tex. 1999); Dardeau v. West Orange-Grove Consolidated Indep. Sch. Dist., 43 F. Supp.2d 722 n.1 (E.D. Tex. 1999). An aggrieved party may object and thereby secure *de novo* review by the district judge prior to remand. However, when the action should not be remanded, the undersigned enters an order denying the motion. Since the action remains

pending, the ruling can be reviewed for whether it is "clearly erroneous or contrary to law" by the presiding district judge.  See 28 U.S.C. § 636 (b)(1)(A).

## II.  Parties; Nature of Suit

Plaintiff, James Woodrow, is a resident of Orange, in Orange County, Texas. Plaintiff formerly was employed in the Paper Mill Department at Inland Paperboard & Packaging, Inc., located in Orange, Texas.  Pl.'s Orig. Pet., at 5.  According to plaintiff, he last worked as a "Set-Up Supervisor."  Id.

Defendant, Inland Paperboard & Packaging, Inc., is a Texas corporation, doing business in Texas, and with a registered agent for service in Texas.  Id. at 2.  Defendant owns and operates the facility where plaintiff formerly worked, and was his employer.  Defendant's employees are organized as affiliates of the Paper, Allied-Industrial, Chemical & Energy Workers International Union AFL-CIO ("PACE") labor union.  Defendant and PACE – via affiliates Local 391 and Local 1398 – are parties to a collective bargaining agreement.

Plaintiff's original petition, filed in state court, asserts three causes of action based on Texas law:

1.  Racial and color discrimination in job classification affecting "compensation, terms, conditions and privileges" of employment in violation of an unspecified provision of the Texas Labor Code.

2.    <u>Retaliation</u> (for filing grievances and for participating in a previous federal lawsuit against defendant) also in violation of an unspecified provision of the Texas Labor Code.  <u>Id.</u> at 4;[2] and

3.    <u>Intentional infliction of emotional distress</u>, arising from retaliatory reprimands occurring in an "extreme and outrageous" manner.  <u>Id.</u> at 5.

### III.  PROCEEDINGS

Plaintiff brought suit on November 29, 2004, in the 163rd Judicial District of Orange County, Texas.  Defendant filed a notice of removal on January 21, 2005, alleging that federal jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1441 and 1446.  Specifically, defendant asserted that a Collective Bargaining Agreement (CBA) between plaintiff's union and defendant governs resolution of each of plaintiff's claims.  Therefore, this case falls within the purview of the Labor Management Relations Act of 1947 (LMRA).  <u>See</u> 29 U.S.C. §§ 141–197.

---

[2]    Plaintiff previously asserted claims of unlawful race-based employment discrimination against defendant in this court.  <u>See</u> <u>John Abram, et al. v. Inland Paperboard and Packaging, Inc.</u>, No. 1:99-cv-423.  That action concluded with a settlement containing a stipulation that this court would retain jurisdiction to enforce terms of settlement. No. 1:99-cv-423: Docket Nos. 59 and 60.
        In the present action, plaintiff alleges that defendant "failed to adhere to the Release and Indemnity Agreement.  Docket No. 3 at 2.  However, plaintiff does not seek to enforce terms of the prior settlement.  Each alleged discriminatory act by defendant occurred <u>after</u> events at issue in the prior suit.  Moreover, in their "Joint Report of the Meeting & Joint Discovery Case Management Plan Under Rule 26(f) - FRCP," the parties stipulate that there are no related cases in state or federal court.  Docket No. 7 at 5.

Shortly after removal, plaintiff moved to remand the case back to state court. Docket No. 3.  Defendant opposes.  Docket Nos. 4 and 9.

## IV.  MOTION TO REMAND

Plaintiff argues that removal was wrongful.  Citing the "well-pleaded complaint rule," plaintiff argues that no issue of federal law appears on the face of his properly pleaded complaint.  Thus, he argues, federal jurisdiction is lacking.

Defendant responds that resolution of plaintiff's claims requires interpretation of a collective bargaining agreement.  In such instances, the federal Labor Management Relations Act preempts plaintiff's state law claims.  Thus, federal question jurisdiction exists.

## V.  WELL-PLEADED COMPLAINTS

Presence or absence of federal question jurisdiction is governed by a judicially-crafted "well-pleaded complaint" rule.  Simply put, this rule results in there being "removal jurisdiction"[3] only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386,

---

[3]    Title 28 U.S.C. § 1441(a) permits removal of civil actions over which United States district courts have "original" jurisdiction: "any civil action brought in a State court of which the district courts of the Untied States have original jurisdiction, may be removed by the defendant or the defendants, to [a] district court of the United States."  Removal jurisdiction, therefore, is categorically dependent on the satisfaction of the requirements for original jurisdiction.  <u>Grupo Dataflux v. Atlas Global Group</u>, 541 U.S. 567, 592 (2004).

392 (1987); see also Rodriguez v. Pacificare of Texas, Inc., 980 F.2d 1014, 1017 (5th

Cir. 1993).  The well-pleaded complaint rule protects from removal all state court

actions except those that could have been filed in federal court.  Caterpillar, 482 U.S.

at 392 (citing 28 U.S.C. § 1441).

The well-pleaded complaint rule affords plaintiffs considerable flexibility.

However, plaintiffs do not enjoy absolute self-determination.  Courts look past words

in the complaint to the *substance* of the claim alleged, in order to determine whether

the claim actually arises under federal law.  Rozzell v. Security Serv., Inc., 38 F.3d

819, 822 (5th Cir. 1994); In re Carter, 618 F.2d 1093, 1101 (5th Cir. 1980) (stating

that the reviewing court looks to the "substance of the complaint, not the labels used

in it").  Similarly, courts disregard artful language in complaints, when such language

is designed to restrict potential implementation of federal jurisdiction.  Eitmann v.

New Orleans Public Serv., Inc., 730 F.2d 359 (5th Cir. 1984); Grynberg Prod. Corp.

v. British Gas, PLC, 817 F. Supp. 1338, 1353–54, 1360 (E.D. Tex. 1993).[4]  Overall,

when substance of allegations necessarily implicates a federal question, the well-

pleaded complaint rule does not guarantee remand.

---

[4]       In Lehmann v. Brown, 230 F.3d 916, 919 (7th Cir. 2000), the Seventh
Circuit stated that when federal law occupies the field, *every claim* in that
field arises under federal law, and that any attempt to present a state law
theory is merely artful pleading to get around the federal ingredient of the
claim.  Id.

Finally – and specifically at issue here – Congress may completely preempt certain areas of state law.  Courts apply a "complete preemption" doctrine when the preemptive force of a federal statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987).

## VI.   LMRA PREEMPTION OF STATE LAW CLAIMS

Section 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185(a), states:

> *Suits for violation of contracts between an employer and a labor organization representing employees  . . . . may be brought in any district court of the United States having jurisdiction of the parties . . . .*

The Supreme Court interprets this provision of the LMRA as grounds for complete preemption whenever a party's claim depends upon the meaning of a collective bargaining agreement.  <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405–406 (1988); <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 209 (1985); <u>Textile Workers v. Lincoln Mills</u>, 353 U.S. 448, 456 (1957).  The underlying justification, or rationale, is based on need for general uniformity in labor relations:

> *The importance of the area which would be affected by separate systems of substantive law makes the need for a single body of federal law particularly compelling . . . State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy*

> *. . . [W]e cannot but conclude that in enacting § 301, Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.*

<u>Local 174, Teamsters v. Lucas Flour Co.</u>, 369 U.S. 95, 103–104 (1962).

In clarifying the doctrine, the Fifth Circuit concluded that if resolution of an employee's claims against the employer requires any *interpretation* of a collective bargaining agreement, state-law remedies upon which the employee relies are pre-empted.  <u>See, e.g.</u>, <u>Reece v. Houston Lighting & Power Co.</u>, 79 F.3d 485, 487–88 (5th Cir. 1996).  The court determined that plaintiff's complaints necessitated interpretation of the parties' CBA because portions of the standard analytical model for employment discrimination claims[5] under the Texas Labor Code were at issue, and some of those steps begged questions addressed in the CBA:

> *Reece's discrimination claim turns on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA.  HL & P will undoubtedly rely on the CBA as its legitimate, non-discriminatory reason for Reece's treatment.  When Reece then attempts to show that HL & P's stated reason is pretextual, the CBA would have to be interpreted because Reece would have to challenge HL & P's rights under the CBA.*

<u>Id.</u>  The court concluded that Reece's employment discrimination claim was therefore preempted.  For similar reasons, the court also concluded that plaintiff's claim for intentional infliction of emotional distress under Texas common law was preempted,

---

[5]      See <u>infra</u> "Race and Color Discrimination," § VII.A.1, for a discussion of the analytical model for claims of race-based employment discrimination under the Texas Labor Code.

because defendant's allegedly "outrageous" conduct would require interpretation of the CBA.  Id.

Several courts examine whether a plaintiff's state law claim is "inextricably intertwined" with a CBA.  If so, LMRA preempts the state law claim and there is a basis for removal jurisdiction.  Trevino v. Ramos, 197 F.3d 777, 780 (5th Cir. 1999); Fuller v. Temple-Inland Forest Prod. Corp., 942 F.Supp. 307, 309 (E.D. Tex. 1996) (citing Jones v. Roadway Express, Inc., 931 F.2d 1086, 1089-91 (5th Cir. 1991)).  If not, however, the claim is "independent" of the agreement for § 301 preemption purposes because the state law claim can be resolved without interpreting the CBA itself.  Lingle v. Norge Division of Magic Chef, 486 U.S. at 409-410.

## VII.  ANALYSIS

Plaintiff's original state court petition expressly asserts only state law causes of action, but it also specifically refers to a collective bargaining agreement as relevant. Pl.'s Pet. ¶ 16.  This alone raises the specter of LMRA preemption.  Consequently, the court must review the petition's basic factual allegations to determine whether resolution of plaintiff's claims necessarily requires interpretation of that agreement.

At a minimum, the collective bargaining agreement between defendant and plaintiff's union representative is *relevant*.  The following comparison shows several instances where plaintiff's allegations implicate the collective bargaining agreement:

Page 9 of  21

| ALLEGATION | RELEVANT PROVISION IN CBA |
|---|---|
| Defendant wrongfully refused to pay plaintiff for performing required duties ostensibly because plaintiff needed additional training. Pl.'s Pet. ¶ 11. | Article 6, section 5 (wages paid to employees during training). |
| Retaliation and intentional infliction of emotional distress, via wrongful reprimand and termination.  Pl.'s Pet ¶¶ 12, 16, 17. | Article 5 (management's rights with regard to promotions, suspensions, demotions, discipline or discharge for just cause); Article 27 (procedures for employees' grievances and complaints regarding disciplinary measures); Article 33 (standard of evidence management must fulfill before taking disciplinary measures). |
| Unlawful employment practices involving plaintiff because of his race and color.  Pl.'s Pet. ¶¶ 13, 15. | Article 1 ("[T]here shall be no discrimination against any employee because of race, color, sex, age, religion, or national origin.") |
| Discrimination regarding compensation and terms, conditions and privileges of his employment, especially classification that adversely affected employment status. Pl.'s Pet. ¶ 14. | Article 5 (management's right to direct the working force regarding assignment of employees' duties); Article (employees' wages); Articles 7, 8, 15, and 18 (employees' schedule, hours, overtime rate, vacations, and insurance and retirement benefits). |

However, plaintiff's claims are not preempted simply because they are *somewhat* entwined with the collective bargaining agreement.  Indeed, the fact that litigants cite and rely on the provisions in an agreement does not automatically mean the dispute is preempted.  Fuller v. Temple-Inland Forest Prod. Corp., 942 F. Supp. 307, 311–12 (E.D. Tex. 1996).  Rather, plaintiff's claims are preempted only when *inextricably* entwined, i.e., when resolution of the dispute substantially depends upon analysis of the terms of the collective bargaining agreement.

## A.      Race and Color Discrimination

Plaintiff alleges that defendant "intentionally engaged in unlawful employment

practices involving plaintiff because of his race and color."  Pl.'s Pet. ¶ 13.  Plaintiff

avers that this discrimination adversely affected plaintiff's compensation, terms,

conditions, privileges, and opportunities of employment.  Pl.'s Pet. ¶ 14.  The

petition contends that defendant's actions violated an unspecified provision of the

Texas Labor Code.

### 1.      Elements of Cause of Action

This cause of action presumably is based on § 21.051 of the Texas Labor Code,

which declares certain forms of discrimination to be unlawful employment practices.[6]

Private causes of action may be brought to enforce this provision of the code.  See,

e.g., Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 n.2 (5th Cir. 1999);

Murphy v. Uncle Ben's, Inc., 168 F.3d 734, 738 (5th Cir. 1999); Fuller, 81 F.

Supp.2d at 727–28.

---

[6]       An employer commits an unlawful employment practice if
          because of *race, color, disability, religion, sex,*
          *national origin, or age* the employer:
               (1) fails or refuses to hire an individual, discharges an
               individual, or discriminates in any other manner against an
               individual in connection with compensation or the terms,
               conditions, or privileges or employment; or
               (2) limits, segregates, or classifies an employee or applicant
               for employment in a manner that would deprive or tend to
               deprive an individual of any employment opportunity or
               adversely affect in any other manner the status of an
               employee.
Tex. Lab. Code Ann. § 21.051 (Vernon 1996)(italics added).

Texas courts embrace a similar analytical model to that established for federal causes of action based on proscribed employment discrimination.  To establish a prima facie case of discrimination under the Texas Labor Code, plaintiff must prove that he: (1) was a member of a protected class; (2) suffered adverse employment action; and (3) was treated dissimilarly from non-protected employees.  Farrington v. Sysco Food Serv., Inc., 865 S.W.2d 247, 251 (Tex.App.– Houston [1st Dist.] 1993, writ denied).  When a plaintiff succeeds, defendant then has the burden of articulating a legitimate, non-discriminatory reason for the alleged unequal treatment.  Id. Finally, when defendant meets this burden, plaintiff must provide evidence that the articulated reason was mere pretext for unlawful discrimination.  Id.

2.    Discussion and Application

Plaintiff's claim centers on compensation received while performing duties of a Set-Up Supervisor.  Pl.'s Pet. ¶ 11.  Plaintiff asserts that defendant did not pay him adequately, whereas defendant claims that lesser payment was justified because plaintiff required more training before becoming a Set-Up Supervisor.  Plaintiff's claim undoubtedly requires reliance on the CBA, which includes a discrete section devoted to wages paid to employees according to their respective titles, as well as a section addressing compensation for employees during training.  As a result, the court cannot ignore the CBA when evaluating whether plaintiff met his initial burden of

establishing a prima facie case.  Similarly – as in <u>Reece v. Houston Lighting & Power</u> <u>Co.</u> – the defendant inevitably will rely on the CBA provisions as its "legitimate, non-discriminatory reason" for its compensation practices regarding plaintiff.  And finally, plaintiff's subsequent showing that defendant's articulated "reason" for its discriminatory conduct is mere pretext for actual discrimination will also require interpretation of the CBA, particularly its compensation standards for Set-Up Supervisors' duties and trainees.

Overall, interpretation of the CBA is necessary for at least one, and conceivably all, of the shifting burdens in the analytical model for employment discrimination claims.  As such, it renders plaintiff's race and color discrimination claim preempted by § 301 of the LMRA.  <u>See, e.g.</u>, <u>Reece v. Houston Lighting & Power</u> <u>Co.</u>, 79 F.3d at 487.

B.     **Retaliation**

Plaintiff's Original Petition asserts that plaintiff's supervisor, Superintendent Fusilier, retaliated against plaintiff for filing a federal court suit which concluded by settlement which entitled plaintiff to a promotion.  Superintendent Fusilier allegedly failed to authorize compensation commensurate with the promotion on the supposed ground that plaintiff required more training.  Plaintiff alleges that he "reported" Mr. Fusilier's allegedly inappropriate actions by following procedures established in the

company's Texas Bargaining Agreement Manual.  Mr. Fusilier then retaliated further through "continuous wrongful reprimands" based on "misrepresentations."  Plaintiff alleges that these actions resulted in plaintiff's eventual termination in violation of an again-unspecified provision of the Texas Labor Code.

1.   Elements of Cause of Action

Presumably, plaintiff invokes § 21.055 of the Texas Labor Code which declares it unlawful for employers to discriminate against employees who oppose a discriminatory practice; make or file a charge; file a complaint; or testify, assist, or participate in any manner in an investigation, proceeding, or hearing.  Tex. Lab. Code Ann. § 21.055 (Vernon 1996).  To establish a prima facie case of retaliation in Texas, an employee must show that (1) he or she engaged in protected activity; (2) the employer took adverse employment action against him or her, and (3) the employer took this action due to the employee's engagement in the protected activity. Thomann v. Lakes Reg'l MHMR Ctr., 162 S.W.3d 788, 799 (Tex. App.–Dallas, 2005, no pet. h.); Jones v. Jefferson County, 15 S.W.3d 206, 210 (Tex. App.–Texarkana 2000, pet. denied); Cox & Smith, Inc. v. Cook, 974 S.W.2d 217, 223–24 (Tex. App.–San Antonio 1998, pet. denied); Mayberry v. Texas Dep't of Agric., 948 S.W.2d 312, 315 (Tex. App.–Austin 1997, writ denied).

When a plaintiff fulfills this *prima facie* standard, the same burden-shifting analysis used in other employment discrimination claims is employed in a retaliation claim.  Cox & Smith, Inc., 974 S.W.2d at 223.  Thus, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged employment action.  Finally, the burden falls on the employee to establish that the employer's permissible reason is actually pretext for retaliation.  Id.; Graves v. Komet, 982 S.W.2d 551, 554 (Tex. App.–San Antonio 1998, writ ref'd).

    2.    <u>Discussion and Application</u>

    *a.*    *Analytical Standard*

Cursory reading of federal cases within this circuit might suggest that most courts conclude that retaliation claims are *not* preempted by Section 301, LMRA.  <u>See</u> <u>Trevino v. Ramos</u>, 197 F.3d 777, 781 (5th Cir. 1999); <u>Jones v. Roadway Express, Inc.</u>, 931 F.2d 1086, 1090 (5th Cir. 1991); <u>Fuller v. Temple-Inland Forest Prod. Corp.</u>, 942 F. Supp. 307 (E.D. Tex. 1996).  Closer reading, however, reveals that these decisions dealt with alleged retaliation for an employee having filed a state worker compensation claim.  In that context, courts are influenced heavily by a

special federal statute prohibiting removal of actions arising under state worker

compensation laws,[7] and reflecting:

> "*strong congressional policy that where a state court has been utilized by one of the parties in the state compensation machinery, the case should remain in the state court for its ultimate disposition.*"

Jones v. Roadway Express, 931 F.2d at 1091 (quoting Kay v. Home Indemnity Co.,

337 F.2d 898, 901 (5th Cir. 1964)).  In addition, it is not readily foreseeable that

provisions of a *collective bargaining agreement* necessarily must be interpreted to

determine whether a defendant retaliated against an employee for filing an unrelated

*worker compensation claim*.  Jones v. Roadway Express, Inc., 931 F.2d at 1090.

When, however, alleged retaliation stems from activity unrelated to worker

compensation claims, courts utilize a traditional analysis to decide the preemption

issue.  Consequently, state court actions to enforce anti-discrimination statutes were

preempted by the LMRA when they required interpreting the parties' CBA.  See

Sullivan v. Raytheon Co., 262 F.3d 41, 50 (1st Cir. 2001) (citing Fant v. New

England Power Serv. Co., 239 F.3d 8, 16 (1st Cir. 2001)).  The overall denouement

is that LMRA preempts state retaliation claims when the court must use the CBA in

determining whether the alleged misconduct was in fact retaliatory unless Congress

specifically indicates that certain classes of actions shall remain in state court.

---

[7]      Title 28 U.S.C. § 1445(c) provides:
        "A civil action in any State court arising under the
        workmen's compensation laws of such State may not be
        removed to any district court of the United States."

      *b.*     *Application*

Under the analytical framework established by Texas courts, plaintiff first must establish a *prima facie* case of retaliation.  Plaintiff might succeed without necessarily requiring an interpretation of the CBA.  However, when the burden shifts to the employer defendant to articulate a legitimate, non-retaliatory reason for its action, the defendant inevitably will rely upon the CBA to justify its actions. Moreover, when plaintiff subsequently attempts to show that defendant's stated reason is pretextual, the CBA will have to be interpreted because plaintiff essentially challenges defendant's rights under the CBA.  Thus, plaintiff's retaliation claim – like his racial discrimination claim – is preempted essentially for the same reasons, i.e., interpretation of the CBA is inherent.

## C.     Intentional Infliction of Emotional Distress

Plaintiff alleges that "continuous wrongful reprimands," based on unspecified "misrepresentations by Mr. Fusilier," were extreme and outrageous, causing plaintiff severe emotional distress.  Pl.'s Pet. ¶ 17.  Plaintiff's Petition seeks damages for "emotional pain."  Pl.'s Pet. ¶ 18.c.  Neither plaintiff's Original Petition nor his motion to remand contain specific factual allegations of extreme and outrageous conduct.

1.      Elements of Claim

To sustain a claim of intentional infliction of emotional distress under Texas law, a plaintiff must prove that: (1) defendant acted intentionally or recklessly; (2) defendant's conduct was extreme and outrageous; (3) such conduct caused emotional distress; and (4) such distress was severe.  Hoffmann-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 445 (Tex. 2004); Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998); see also Baker v. Farmers Elec. Coop., Inc., 34 F.3d 274, 280 (5th Cir. 1994).

2.      Discussion and Application

a.      Analytical Standard

The governing Fifth Circuit court of appeals consistently views the second element of the retaliation cause of action (i.e., extreme and outrageous conduct) as requiring reference to the collective bargaining agreement.  Stafford v. True Temper Sports, 123 F.3d 291, 296 (5th Cir. 1997); Reece v. Houston Lighting & Power Co., 79 F.3d 485, 487 (5th Cir. 1996); Thomas v. LTV Corp., 39 F.3d 611, 619 (5th Cir. 1994); Burgos v. Southwestern Bell, 20 F.3d 633, 636 (5th Cir. 1994); Brown v. Southwestern Bell Tel. Co., 901 F.2d 1250, 1256 (5th Cir. 1990).  For that reason, several cases hold claims of intentional infliction of emotional distress relating to plaintiffs' alleged employment discrimination preempted by § 301 of the LMRA.

Stafford v. True Temper Sports, 123 F.3d at 296; Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25, 430 U.S. 290, 305 (1977); Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 300 (5th Cir. 1994). In Stafford v. True Temper Sports, the court stated:

> *[T]he LMRA preempts state-law emotional distress claims if those claims are related to employment discrimination.*

Stafford, 123 F.3d at 296 (quoting Barrow, 10 F.3d at 300).

The only exception recognized in circuit jurisprudence is when a CBA could never condone alleged conduct giving rise to the claim. A claim of intentional infliction of emotional distress arising solely from physical attack of an employee is not preempted because no agreement could permit battery, and resolution of the plaintiff's claim would not depend on the meaning of the terms of the CBA. See, e.g., Smith v. Houston Oilers, Inc., 87 F.3d 717, 721 (5th Cir. 1996). But in general, LMRA § 301 presumptively preempts claims of intentional infliction of emotional distress when they arise out of alleged employment discrimination claim and the CBA could have directly permitted the sanction subsequently asserted as being extreme and outrageous conduct. Conversely, the alleged conduct must be so severe that it could not be resolved by measures contemplated in the parties' CBA before LMRA § 301 preemption is inapplicable.

b.    *Application*

Plaintiff proffers no specific factual averments of severe tortious conduct equivalent to a physical attack such that no CBA could sanction or allow.   Rather, plaintiff complains of reprimands which clearly are part of progressive discipline schemes that permeate mainstream labor-management relations.[8]   Moreover, the CBA at issue specifically mentions warnings.  <u>See</u> Art. 33 of CBA (recognizing "right of management to discipline for just cause, including warning, suspension, or dis-charge").  It contains provisions relating to management's rights with regard to promotions, suspensions, demotions, discipline or discharge for just cause (art. 5), procedures for employees' grievances and complaints regarding disciplinary measures (art. 27), and a procedure for ascertaining when management has enough evidence to take disciplinary measures at all.  Consequently, the CBA is an appropriate and necessary benchmark for determining what reprimands are ordinary and what are extreme and outrageous.

In this action, the fact-finder will be required to determine whether, for instance, plaintiff's manager, Mr. Fusilier, had sufficient evidence to take disciplinary measures against plaintiff, and had just cause as required.  These requirements are

---

[8]      <u>Patent Office Prof'l Ass'n v. Fed. Labor Relations Auth.</u>, 26 F.3d 1148, 1155 (D.C. Cir. 1994); <u>Warrior & Gulf Navigation Co. v. United Steelworkers of Am.</u>, 996 F.2d 279, 280 (11th Cir. 1993); <u>Dept. of Air Force, U.S. Air Force Acad. v. Fed. Labor Relations Auth.</u>, 717 F.2d 1314, 1315-16 (10th Cir. 1983); <u>see also</u> 5 U.S.C. § 7106(a)(2) (stating that management has right to discipline).

directly listed in the CBA.  Hence, the CBA provides a standard by which to measure

whether conduct is severe and outrageous.  This circumstance compels a conclusion

that plaintiff's final cause of action – intentional infliction of emotional distress – also

is preempted by Section 301 of the LMRA.

## VIII.  Conclusion

Resolution of each of plaintiff's causes of action substantially depends on

analysis of the terms of the collective bargaining agreement between defendant and

the labor organization representing plaintiff.  As such, plaintiff's claims are inextrica-

bly entwined with the agreement, and are therefore preempted by LMRA § 301.

Federal question jurisdiction exists, and the action cannot be remanded.

**SIGNED** this 20th day of July, 2005.

*Earl S. Hines*

Earl S. Hines
United States Magistrate Judge